Benjamin Woodhouse
Havensight Capital LLC
#5 Company St.
Christiansted, USVI 00820
United States
California Bar #261361

FILED 2014 NOV 20 PM 1:26
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: _____

# UNITED STATES FEDERAL COURT
## CENTRAL DISTRICT OF CALIFORNIA

Case No.: CV14-08985-SVW(ASx)

Havensight Capital LLC, Plaintiff,

COMPLAINT

Nike Inc, Defendant

Does 1 to 10

Defendant

## Jurisdiction

The Federal Court of the Central District of California has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and an amount in controversy greater than $75,000.

## Venue

Venue is proper pursuant to 28 U.S.C § 1391 because the events giving rise to this complaint happened in this district.

## Parties

1. Plaintiff is a Limited Liability Company, and its agent of process is Trust Company of the Americas, 5030 Anchor Way, Christiansted, USVI 00820.

2. Nike Inc, has an agent of process, located at One Bowerman Beaverton, OR 97005.

## Statement of Facts

COMPLAINT

Havensight Capital LLC ("Plaintiff") launched St. Thomas FC on Jan 1, 2012, and is the owner and operator of St. Thomas F.C. and the website stthomasfc.com. St. Thomas FC provides high quality soccer products to soccer specialty stores, sporting good stores, and individual consumers through its website, and marketing personnel. Plaintiff paid a website design firm, to design the website, stthomasfc.com, which features prominently the likenesses of its signed professional soccer players, soccer coaches, supermodels, FIFA teams, and cartoon character. For the past two years, the Plaintiff has served soccer specialty stores in almost every state, with soccer balls, cleats, and clothing, with the St. Thomas FC emblem and the text writing, "St. Thomas F.C." on each and every one of its products, not unlike the Nike products, which were branded with Nike F.C. shortly after the launch. It also has marketed to customers through online radio, social networking and trade shows.

Defendant currently requires all soccer store owners to purchase a minimum number of soccer balls in order to access Nike's services, and products, provides preferred pricing and product access, to select customers, and also uses excessive minimum purchase schemes, with its other miscellaneous soccer products. A number of store owners have complained to Plaintiff that they are forced to purchase more balls than they can afford, and more than is necessary to meet current demand, in order to remain competitive with other larger big box stores. A majority of store owners have refused, on a number of occasions to purchase St. Thomas FC balls because of the excessive purchase requirements set by Nike Inc. Leadership, the Defendant. They continuously tell St. Thomas F.C. personnel that they would like to purchase St. Thomas FC products, to make their stores more diverse in brand offerings, but are already forced to purchase more items from Nike than they can reasonably sell. Nike has also implemented a program to limit and quell online sales of its products by almost

all of its customers, in a next step to creating an iron monopolistic grip on the soccer market.

Claims

I. Intentional Interference with Prospective Economic Relations

In Youst v. Longo (1987) 43 Cal.3d 64, 71, the Court held that there are "five elements for the tort of intentional interference with prospective economic advantage are: (1) [a]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." The Defendant, here, either, knew, or had constructive notice of the fact that St. Thomas FC was engaged in multiple business relationship with soccer store owners, and that this relationship would create potential profits for the Plaintiff. Constructive notice, here, is evidenced from both the stthomasfc.com website, and the St. Thomas FC appearances at major national trade shows, and all online social networking and radio marketing. Moreover, here, the Defendant interfered, and disrupted this relationship through the distribution of its products through a predatory pricing scheme. Specifically, the Defendant pressured its customers to purchase more items than they are capable of selling or are desired, through the threat of not serving the customer, with the direct purpose of interfering with the customer's ability to form contractual relations, with other brands, and parties.

II. Unfair Competition and Trade Practices

The Court should probably find that the Defendant has committed the tort of Unfair Competition and Trade practices. Under *California's Unfair Competition Law (UCL), Cal. Bus. of Prof. Code § 17200, et seq.* the UCL defines unfair competition as, among other things, "including any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." The Defendant, here, engages in monopolistic behavior, and has violated anti-trust statutes in its predatory pricing, with its current purchasing requirements that it levies on all soccer store owners. This is a direct violation of *Section 15 U.S.C. title 2, commonly known as the Sherman Act.* Further, the definition of monopolistic behavior is the power to "exclude competition." See United States v. E.I. DuPont de Nemours & Co., 351 U.S. 377, 391 (1956). The Defendant, here, engages in aggressive anti-competitive behavior because it requires soccer stores to make substantial quantity purchases even when such purchases will not meet demand. They also provide special pricing, to select big box retailers, in order to streamline distribution and unfairly drive soccer specialty stores out of business, which are more likely to aggregate soccer brands. They have also implemented a secondary scheme to impair online sales of their products, and drive customers to Nike.com and a select number of online retail portals. This is with the purpose of completing its monopoly, and taking away choice from the consumer. Further, the Plaintiff has suffered damages, as a number of store owners have refused service, in order to save up, and purchase the excess demand of product for access to Nike services, and to remain competitive with big box retailers. Finally, the Plaintiff has also suffered damages because of the inability for St. Thomas FC to compete in the market, and garner sales to soccer store

**COMPLAINT**

specialty owners. Finally, it is not within the public's interest to eliminate soccer stores in exchange for larger profits obtained through illegal pricing for big box retailers. Big box retailers carry a much smaller and streamlined selection of products, which in turn will continue to incentivize Nike to engage in this illegal conduct. We have a vicious circle that has been created, here, in the soccer industry and it needs to be neutralized. The tort of unfair competition is justified because of the Defendant's general monopolistic behavior, and the fact that commerce will be substantially stunted, as a result of their illegal streamlining of distribution channels. In fact, Nike is one of the largest and most known retailers in the World, if the Court does not stop them, then others will follow suit, in illegally pricing products, and creating barriers to service through the implementation of monopoly game plans.

III. Intentional Interference with Contractual Relations

The Court should probably find that the defendant committed the tort of Intentional Interference with Contractual Relations, *Leasing Corp. v. Geltman*, 406 Mass. 811, 812, 551 N.E.2d 20 n. 6 (Mass. 1990), the Court held that a party is liable for intentional interference with contractual relations, if a valid contract existed, that defendant had knowledge of the contract, that defendant acted intentionally and improperly, and that plaintiff was injured by the defendant's actions. In this case, there was an intentional interference with contractual relations because Plaintiff either had or attempted to complete a contractual relationship, with a vast number of soccer specialty stores, in the United States, Canada, Mexico, and England. The Plaintiff was not able to benefit from the contractual relationship because Nike interfered with the relationship through its price schemes, and unfair purchasing

requirements. Nike leadership is aware of other competing brands, here, and has decided to illegally create pricing models, to interfere with such relations.

IV.   Negligence

The Court should probably find that the Defendant committed the tort of Negligence. In <u>U.S. v. Carroll Towing Co.</u>, 159 F.2d 169, 174 (2nd Circuit 1947), the Court ruled that a Defendant is liable for Negligence if the risk outweighed the burden of prevention of the obstruction. In this case, the Defendant, here, should have known that its monopolistic predatory pricing schemes would cause harm, to other competitors, customers, and the general public, most importantly. It could have avoided, here, damaging the aforementioned parties by more carefully constructing its pricing model, and following the law, which safeguards competition through natural market forces.

**Request for Relief**

Plaintiff seeks $378.4 million in compensatory damages for the damage to its business, and all potential relations with customers. Also, in *Waits v. Frito Lay, Inc.* 978 F.2d 1093 (9th Cir. 1992), the Court held that punitive damages are available where it is proven by clear and convincing evidence that the Defendant is guilty of fraud or malice. The Defendant, here, clearly practices predatory pricing, with the intent to create an industry that is not governed by natural market forces, and is driven to eliminate family owned specialty stores, and all competitors. This is the very definition of fraud, and the Court should award $300 million dollars, in punitive damages to the Plaintiff.

The Court should award in total $678.4 million dollars, and one hundred thousand dollars in attorneys' fees for a total of $678.5 million dollars.

Benjamin Woodhouse esq.
Havensight Capital LLC
#5 Company St.
Christiansted, USVI 00820
805 478 1958
California Bar #261361

COMPLAINT